UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

RETAIL BRAND ALLIANCE, INC.,          :

                 Plaintiff,          :          05 Civ. 1031 (RJH)(HBP)

   -against-                       :          MEMORANDUM OPINION
                                 AND ORDER

FACTORY MUTUAL INSURANCE CO.,         :

                 Defendant.          :

----------------------------------X


        PITMAN, United States Magistrate Judge:


        I write to resolve several outstanding discovery
disputes in this matter.

I.  Background

        This is an insurance coverage dispute arising out of
the terrorist attacks in New York City that took place on Septem-
ber 11, 2001.  Plaintiff operated three retail shops in the
underground shopping mall formerly located at the World Trade
Center site.  The shops sold women's apparel, primarily to young
career women.  Because a large percentage of the individuals who
formerly worked at the World Trade Center were young career women
and because these women would have passed plaintiff's stores
while commuting between the subway or PATH station and their
offices, plaintiff's World Trade Center stores are alleged to

have had a uniquely favorable location that contributed to their generating greater profit than any of plaintiff's other stores.

Plaintiff purchased business interruption insurance for the World Trade Center Stores from defendant, and the principal dispute in this action is the duration of the time period for which benefits should be paid. Plaintiff claims that it is entitled to receive business interruption benefits for the period of time that it would take, acting with due dispatch and diligence, to replace the stores and make them ready for operation at a location with a sales environment comparable to that which existed at the World Trade Center prior to September 11, 2001. Defendant claims that the coverage period is limited to the period of time it would reasonably take to replace the World Trade Center stores with reasonably equivalent stores in a reasonably equivalent location. The facts and the contentions of the parties are set forth in greater detail in the Memorandum Opinion and Order of the Honorable Richard J. Holwell, United States District Judge, denying plaintiff's motion for partial summary judgment and granting defendant's motion for partial summary judgment. Retail Brand Alliance, Inc. v. Factory Mut. Ins. Co., 489 F. Supp.2d 326 (S.D.N.Y. 2007).

## II. 8-31-04 Email

The parties' first discovery dispute concerns a document being withheld by plaintiff on the basis of the attorney-client privilege and the work-product doctrine. The document is an August 31, 2004 email and attachment from Jim Bettner to C. Bertho, Greg Muntel, B. Bauman, G. Feola and M. Dunn, with a copy being sent to J. Kocott. At all relevant times, Mr. Feola was plaintiff's in-house counsel. Plaintiff's log of documents withheld on the ground of privilege describes the document as "Email to in-house counsel with draft outline, seeking legal advice in anticipation of litigation regarding outline for discussion re: 9/11 insurance claim" (Letter to the undersigned from Marshall Gilinsky, Esq., dated November 5, 2007).

The email in issue has been submitted to my chambers for in camera review and consists of the email itself and a one page attachment. The e-mail transmits an agenda of subjects to be discussed on the following day during a conference call with plaintiff's president and CEO. As noted above, the email was sent to five addressees, one of whom was Mr. Feola. There is no express request for advice directed to Mr. Feola in either the email or the attachment nor is there any indication in either the email or the attachment that the email was being sent to Mr. Feola (or any other addressee) for some reason unique to that addressee. The attachment is a list of points for discussion

concerning plaintiff's claim against defendant.  The first five

points are simply recitations of particular events that have

occurred in the case.  By their nature, all five of these events

must be known to defendant.  The balance of the attachment lists

prospective steps that plaintiff was contemplating taking con-

cerning this action.  There is no indication on the face of the

document that its author deemed it to be privileged nor is there

any instruction to the recipients that the document was a privi-

leged communication that should not be disseminated.

The email and the attachment are not protected by the

attorney-client privilege.  The elements of the attorney-client

privilege are well settled:

> "The [attorney-client] privilege applies only if (1)
> the asserted holder of the privilege is or sought to
> become a client; (2) the person to whom communication
> was made (a) is a member of the bar of a court, or his
> subordinate and (b) in connection with this communica-
> tion is acting as a lawyer; (3) the communication
> relates to a fact of which the attorney was informed
> (a) by his client (b) without the presence of strangers
> (c) for the purpose of securing primarily either (i) an
> opinion on law or (ii) legal services or (iii) assis-
> tance in some legal proceeding, and not (d) for the
> purpose of committing a crime or tort; and (4) the
> privilege has been (a) claimed and (b) not waived by
> the client."

Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160

F.R.D. 437, 441 (S.D.N.Y. 1995), quoting United States v. United

Shoe Mach. Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950); see

United States v. Davis, 131 F.R.D. 391, 398 (S.D.N.Y. 1990).[1]

         Neither the face of the email nor the face of the

attachment even remotely suggests that either document was

seeking legal advice.  Although I do not doubt that a document

can be found to be privileged where it constitutes an implicit

request for legal advice and the other elements of the privilege

are present, there is nothing about the email and the attachment

that even suggests an implicit request for legal advice.  If

anything, it appears that the email and attachment were sent to

Mr. Feola as a matter of general corporate information.  Since

plaintiff has not submitted any evidence establishing that the

email and the attachment constituted a request for legal advice,

see von Bulow v. von Bulow, 811 F.2d 136, 144 (2d Cir. 1987)

(party asserting a privilege bears the burden of establishing its

elements); In re Grand Jury Subpoena Dated Jan. 4, 1989, 750 F.2d

223, 224 (2d Cir. 1984) (same), I conclude that neither document

is protected by the attorney-client privilege.

---

[1]Since this is a diversity case, privilege issues are controlled by state law and would ordinarily require a choice-of-law analysis.  Fed.R.Evid. 501; Glidden Co. v. Jandernoa, 173 F.R.D. 459, 470 (W.D. Mich. 1997); Tartaglia v. Paul Revere Life Ins. Co., 948 F. Supp. 325, 326 (S.D.N.Y. 1996); Bamco 18 v. Reeves, 685 F. Supp. 414, 416 (S.D.N.Y. 1988); Mazella v. Philadelphia Newspapers, Inc., 479 F. Supp. 523, 526 (E.D.N.Y. 1979).  Since neither side addresses this issue, I shall apply the general statement of the privilege set forth in the text.

Nevertheless, I conclude that a substantial portion of the attachment is protected by the work-product doctrine.

The scope of the work-product doctrine is set forth in Fed.R.Civ.P. 26(b)(3)(A) & (B):

Trial Preparation Materials.

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> >
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

The applicability of the work-product doctrine is exclusively governed by federal law. Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 471 (S.D.N.Y. 1993).

In contrast to the attorney-client privilege, which is intended to encourage full disclosure by the client, the work-product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strat-

6

egy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." <u>United States v. Adlman</u>, 134 F.3d 1194, 1196 (2d Cir. 1998), <u>quoting</u> <u>Hickman v. Taylor</u>, 329 U.S. 495, 511 (1947). "'[A]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" <u>In re Leslie Fay Cos. Sec. Litig.</u>, 161 F.R.D. 274, 279 (S.D.N.Y. 1995), <u>quoting</u> <u>United States v. Nobles</u>, 422 U.S. 225, 238 (1975). The work-product doctrine protects the ruminations by an attorney or party concerning the strategy to be followed in a litigation. <u>In re Grand Jury Subpoena Dated Oct. 22, 2001</u>, 282 F.3d 156, 161 (2d Cir. 2002); <u>In re Steinhardt Partners, L.P.</u>, 9 F.3d 230, 234 (2d Cir. 1993); <u>Feacher v. Intercontinental Hotels Group</u>, 3:06-CV-0877 (TJM/DEP), 2007 WL 3104329 at *4 (N.D.N.Y. Oct. 22, 2007).[2] Like the attorney-client privilege, the party asserting the protection of the work-product doctrine bears the burden of proof. <u>In re Grand Jury Subpoena Dated Dec. 19, 1978</u>, 599 F.2d 504, 510 (2d Cir. 1979).

"[T]hree conditions must be met to earn work product protection. The material must (1) be a document or a tangible

_____

[2]Although most of the cases discuss the work-product doctrine as affording counsel privacy with respect to the development of his or her strategy, the work-product doctrine also applies to documents created by a party. <u>In Re Grand Jury Subpoenas Dated Dec. 18, 1981 & Jan. 4, 1982</u>, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982) (McLaughlin, J.). Accordingly, the doctrine should also protect strategy documents created by a party.

thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." In Re Grand Jury Subpoenas Dated Dec. 18, 1981 & January 4, 1982, supra, 561 F. Supp. at 1257 (McLaughlin, J.). Accord Weinhold v. Witte Heavy Lift, Inc., 90 Civ. 2096 (PKL), 1994 WL 132392 at *2 (S.D.N.Y. Apr. 11, 1994); 2 Michael C. Silberberg & Edward M. Spiro, Civil Practice in the Southern District of New York, § 15.04, at 15-12 (2d ed. 2007).

The Court of Appeals for the Second Circuit has explained that the second element of this test does not limit the doctrine to documents prepared primarily or exclusively to assist in litigation:

> The text of Rule 26(b)(3) does not limit its protection to materials prepared to assist at trial. To the contrary, the text of the Rule clearly sweeps more broadly. It expressly states that work-product privilege applies not only to documents "prepared . . . for trial" but also to those prepared "in anticipation of litigation." If the drafters of the Rule intended to limit its protection to documents made to assist in preparation for litigation, this would have been adequately conveyed by the phrase "prepared . . . for trial." The fact that documents prepared "in anticipation of litigation" were also included confirms that the drafters considered this to be a different, and broader category. Nothing in the Rule states or suggests that documents prepared "in anticipation of litigation" with the purpose of assisting in the making of a business decision do not fall within its scope.

United States v. Adlman, supra, 134 F.3d at 1198-99. Thus, the appropriate test for assessing the second element of the test is whether "'in light of the nature of the document and the factual

situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"  United States v. Adlman, supra, 134 F.3d at 1202, quoting 8 Charles A. Wright, Arthur R. Miller & Richard Marcus, Federal Practice & Procedure § 2024, at 343 (1994).

Upon reviewing the email, the attachment and the parties' arguments, I conclude that part of the attachment is protected by the work-product doctrine, namely, from the paragraph beginning "RBA has . . ." through the end of the attachment.

The email itself is just a transmittal document.  It does not disclose client confidences, does not seek legal advice and does not disclose any litigation strategy.  It contains nothing protectable under either the attorney-client privilege or the work-product doctrine.  Renner v. Chase Manhattan Bank, 98 Civ. 926 (CSH), 2001 WL 1356192 at *5 (S.D.N.Y. Nov. 2, 2001) ("Indeed, transmittal documents themselves are not privileged unless they reveal the client's confidences."); Domestic Sales Corp. v. Intertherm, Inc.,  No. S87-81, 1988 WL 492342 at *10 (N.D. Ind. Mar. 28, 1988) ("[C]ommunications made in the routine course of business, such as transmittal letters or acknowledgment of receipt letters, which disclose no privileged matters and which are devoid of legal advice or requests for such advice are not protected."); see TVT Records, Inc. v. Island Def Jam Music

Group, a Div. of UMG Recordings, INC., 02 Civ. 6644 (VM)(DF), 2003 WL 749801 at *3 (S.D.N.Y. Mar. 5, 2003); Am. Motors Corp. v. Great Am. Surplus Lines Ins. Co., No. 87 C 2496, 1988 WL 2788 at *3 (N.D. Ill. Jan. 8, 1988); see also Allen-Bradley Co. v. Autotech Corp., No. 86 C 8514, 1989 WL 134500 at *1 (N.D. Ill. Oct. 11, 1989).

The first five discussion points listed on the attachment along with the header material merely list historical facts concerning this litigation and plaintiff's dispute with defendant. The facts set forth are so basic and so intuitively significant, they do not even indirectly reflect either counsel or plaintiff's determination of what is significant in the case. Cf. Sporck v. Peil, 759 F.2d 312, 316 (3rd Cir. 1985) (counsel's selection of certain documents out of thousands produced in litigation constitutes work product because it reflects counsel's determination of the most relevant evidence).

The balance of the attachment, however, is entirely devoted to plaintiff's strategy in this action and, under the authorities discussed above, is at the center of the type of material protected by the work-product doctrine. Thus, plaintiff need not produce that part of the attachment to the 8-31-04 email that begins with the paragraph beginning "RBA has . . ." through the end of the attachment. The balance of the email and the attachment should be produced.

III.  Deposition of
      Claudio del Vecchio

       The parties' second dispute concerns the deposition of

Claudio del Vecchio, plaintiff's chief executive officer.

Plaintiff seeks a protective order precluding Mr. del Vecchio's

deposition on the ground that he has no first-hand knowledge of

any relevant facts and that his deposition is sought solely for

purposes of harassment.

       Fed.R.Civ.P. 26(c) authorizes a federal court to issue

"an order to protect a party or person [from whom discovery is

sought] from annoyance, embarrassment, oppression, or undue

burden or expense . . . ."

       Mr. del Vecchio's motion requires balancing of the

broad discovery permitted by the Federal Rules of Civil Procedure

with the court's obligation to ensure that discovery is not

misused as a tool for oppression or harassment.

            The Federal Rules set very liberal limits on the
       scope of discovery.  A party may inquire about "any
       matter, not privileged, that is relevant to [a] claim
       or defense[,]" and "[f]or good cause, the court may
       order discovery of any matter relevant to the subject
       matter involved in the action."  Fed.R.Civ.P. 26(b)(1).
       "[H]ighly-placed executives are not immune from discov-
       ery.  'The fact that [an executive] has a busy sched-
       ule' is [ ] not a basis for foreclosing otherwise
       proper discovery.'"  Consolidated Rail Corp. v. Primary
       Industries Corp., No. 92 Civ. 4927, 1993 WL 364471, at
       *1 (S.D.N.Y. Sept. 10, 1993) (quoting CBS, Inc. v.
       Ahern, 102 F.R.D. 820, 822 (S.D.N.Y. 1984)).  Even
       where, as in this case, a high-ranking corporate offi-
       cer denies personal knowledge of the issues at hand,
       this "claim . . . is subject to testing by the examin-

11

ing party." <u>Consolidated Rail Corp.</u>, 1993 WL 364471, at *1 (citing <u>Amherst Leasing Corp. v. Emhart Corp.</u>, 65 F.R.D. 121, 122 (D. Conn. 1974)).

Nevertheless, discovery is not boundless, and a court may place limits on discovery demands that are "unreasonably cumulative or duplicative," or in cases where

the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C). Likelihood of harassment and business disruption are factors to be considered in deciding whether to allow discovery of corporate executives. <u>See Consolidated Rail Corp.</u>, 1993 WL 364471, at *1; <u>Arkwright Mutual Insurance Co. v. National Union Fire Insurance Co.</u>, No. 90 Civ. 7811, 1993 WL 34678, at *2 (S.D.N.Y. Feb. 4, 1993). Unless it can be demonstrated that a corporate official has "some unique knowledge" of the issues in the case, "it may be appropriate to preclude a [ ] deposition of a highly-placed executive" while allowing other witnesses with the same knowledge to be questioned. <u>Consolidated Rail Corp.</u>, 1993 WL 364471, at *1 (citations omitted).

<u>Burns v. Bank of America</u>, 03 Civ. 1685 (RMB)(JCF), 2007 WL 1589437 at *3 (S.D.N.Y. June 4, 2007); <u>see</u> <u>also</u> <u>RxUSA Wholesale, Inc. v. McKesson Corp.</u>, CV-06-4343 (DRH)(AKT), 2007 WL 1827335 at *4 (E.D.N.Y. June 25, 2007).

Mr. del Vecchio has submitted an affidavit in which he states that he has no "unique personal knowledge" of the claims raised in this matter and that any testimony he could give would be duplicative of the testimony already given by other employees of plaintiff, namely, Messrs. Bettner, Dunn, Muntel and Ms.

12

LaBroad (Affidavit of Claudio del Vecchio, sworn to Dec. 4, 2006 at ¶¶ 6-7 and annexed as Exhibit D to the Letter of Marshall Gilinsky, Esq. to the undersigned dated Dec. 4, 2006).  This affidavit satisfies Mr. del Vecchio's initial burden of demonstrating a lack of relevant knowledge.  See Penn Group, LLC v. Slater, 07 Civ. 729 (MHD), 2007 WL 2020099 at *13 (S.D.N.Y. June 13, 2007) ("[T]he proponent of a protective order, plaintiff bears the burden to demonstrate good cause for its proposed limitations . . . ."); Infosint S.A. v. H. Lundbeck A.S., 06 Civ. 2869 (LAK)(RLE), 2007 WL 1467784 at *2 (S.D.N.Y. May 16, 2007) ("The party seeking a protective order has the burden of demonstrating that good cause exists for issuance of the order." (internal quotation marks omitted)).

The only evidence defendant offers in opposition are snatches of deposition testimony that show Mr. del Vecchio was involved in the submission of plaintiff's claim for business interruption benefits.  The problem with this evidence is that plaintiff's claim for benefits does not appear to be relevant to any issue in the case.  The coverage dispute here does not turn on any alleged deficiency in plaintiff's claim nor does it turn on any alleged deficiency concerning the submission of the claim.  In addition, defendant does not cite any inconsistencies between plaintiff' claim for benefits and the positions taken and statements made in this action.  Thus, it appears that Mr. del

Vecchio's post-casualty involvement with the preparation of the claim has no relevance to any issue in the case.

Nevertheless, I believe that the issuance of a broad protective order precluding any discovery from Mr. del Vecchio goes too far. Given the fact that knowledge is frequently proved circumstantially, precluding all discovery of a highly placed executive based solely on his unchallenged denial of knowledge sets the bar for a protective order too low. As the authorities cited above demonstrate, parties to an action are ordinarily entitled to test a claim by a potential witness that he has no knowledge.

I believe the conflicting interests are appropriately balanced here by permitting defendant to depose Mr. del Vecchio by written questions in the first instance. See Fed.R.Civ.P. 31. This vehicle will permit a limited probing of Mr. del Vecchio's statements, minimizes the temporal burden of the examination and ensures that the deposition will not be used as a vehicle to embarrass or harass Mr. del Vecchio. Bouchard v. New York Archdiocese, 04 Civ. 9978 (CSH)(HBP), 2007 WL 2728666 at *3-*5 (S.D.N.Y. Sept. 19, 2007), aff'd, 2007 WL 4563492 (S.D.N.Y. Dec. 18, 2007).[3] Defendant may serve up to 25 questions on Mr. del

_____

[3]In Bouchard, the Cardinal of the Archdiocese of New York sought a protective order precluding his deposition on the ground that he had no knowledge of the alleged matters underlying the action. I resolved the dispute in precisely the same manner that
(continued...)

14

Vecchio concerning the claims and defenses in this matter.  Mr. del Vecchio shall have 21 days to respond to those questions; in responding to the questions, Mr. del Vecchio may assert any objection that could be asserted in response to an interrogatory except an objection based on Local Civil Rule 33.3.  Subparts of questions will count against the numerical limit as will improper question to which valid objection is made.  My Order is without prejudice to a further application to depose Mr. del Vecchio by oral examination if his answers to plaintiff's written questions demonstrate that there is some valid basis for an oral examination.

IV.  Conclusion

        Accordingly, for all the foregoing reasons, defendant's application to compel production of the 8-31-04 email and attachment is granted except with respect to the discussion point on the attachment that begins "RBA has . . ." and all the material appearing thereafter.  In addition, plaintiff's application for a protective order precluding the deposition of Claudio del Vecchio is granted to the extent that any questioning of Mr. del Vecchio shall be done by written questions and shall be limited to a

---

[3](...continued)
I am resolving Mr. del Vecchio's application, namely a written deposition on 25 written questions.  This result was subsequently affirmed by Judge Haight.

total of 25 questions. In addition, this Order is without prejudice to a further application by defendant to conduct the oral examination of Mr. del Vecchio upon a showing of good cause.

Dated:  New York, New York
        March 7, 2008

                            SO ORDERED

                            _____
                            HENRY PITMAN
                            United States Magistrate Judge

Copies transmitted to:

Marshall Gilinsky, Esq.
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, New York  10020

Emily P. Hennen, Esq.
Robins, Kaplan, Miller
   & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota  55402-2015